UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ZANDRA KNEPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-CV-282-JD |
| | ) | |
| MARSHA HUFFMAN d/b/a MARTIN | ) | |
| FINANCIAL MANAGEMENT INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Zandra Knepp filed this action alleging that Marsha Huffman, doing business as

Martin Financial Management, Inc. ("Martin Financial"), violated both the Fair Debt Collection

Practices Act ("FDCPA") and the Indiana Deceptive Consumer Sales Act ("IDCSA") in the

course of attempting to collect on an unpaid water bill that Ms. Knepp owed to the Town of

Argos ("Town"). At the close of discovery, both parties moved for summary judgment [DE 23;

DE 25]. For the reasons that follow, the Court finds that plaintiff's motion is granted and

defendant's motion is denied, with final judgment withheld pending further proceedings on the

issue of damages.

## I.  FACTUAL BACKGROUND

The relevant facts of this case are largely undisputed given that they are document based

or have been admitted in the pleadings. That is, Ms. Knepp is a former resident of the Town of

Argos, Indiana, who received utility services through the Town. As of late December 2016, Ms.

Knepp had an overdue balance on her account in the amount of $361.71 [DE 35 at 3]. The Town

mailed Ms. Knepp three letters in 2017, dated January 3, January 17, and February 17, informing

her that payment was due [DE 35 at 4-6]. The latter two letters advised Ms. Knepp that the Town

would turn the matter over to its collection agency if the balance remained unpaid, which would then make her "responsible for any costs incurred to collect any unpaid debts including, but not limited to, collection fees, interest fees and attorneys fees."

In fact, Ordinance 2000-12 (passed by the Town on November 14, 2000), provided the Town with the authority to determine the costs of collecting on accounts owed to it and to "cause such costs to be added to the money owed."[1] [DE 35 at 8-9]. The Town also entered into an agreement with Martin Financial that permitted Martin Financial to collect on accounts receivable that were referred to it [DE 35 at 10]. While the agreement indicates that the rights to such accounts are also supposed to be assigned to Martin Financial [DE 26-2; DE 35 at 10], no such assignment took place in this case. Regardless, the Town and Martin Financial admit that Ms. Knepp's delinquent account was referred to Martin Financial on March 17, 2017, for collection purposes [DE 11 at 2; DE 35 at 2, 7].

On March 22, 2017, Martin Financial, an admitted "debt collector" and "supplier" (for purposes of the FDCPA and IDCSA), sent Ms. Knepp two letters [DE 1-1; DE 1-2] to collect on the consumer debt/transaction [DE 11 at 2-6]. The first letter listed: the creditor as the "Town of Argos;" an account number of 111131-43265; an "Original Amount" due of $361.71; and, a "Total Due Today" amount of $361.79 [DE 1-1] *(error in original with respect to the total amount due today)*. The second letter listed: the creditor as "MFM Fees;" an account number of 111132-43265; an "Original Amount" due of $180.86; and, a "Total Due Today" amount of

_____

[1] To the extent plaintiff contests the Town's legal authority to pass the ordinance at issue, she does so without providing any basis for the argument and without recognizing that a municipality, which includes a Town, is permitted to adopt ordinances and collect money owed to it (which may include the costs of collection), consistent with Indiana Code §§ 36-1-2-11, 36-1-2-23, 36-1-4-11, 36-1-4-17.

$180.86 [DE 1-2][2] Both letters explicitly indicated that the amount owed could vary from day to day, and also stated: "[a]dditionally, legal interest will accrue at the rate of eight percent (8%) per year as provided for by Indiana State Statute, unless there is a written contract allowing for a different rate of interest which may apply."

Ms. Knepp alleges that Martin Financial's dunning letters contain false and misleading representations in an attempt to collect unauthorized amounts by a debt collector in violation of the FDCPA. She further asserts that the same conduct constitutes a deceptive act by a supplier concerning a consumer transaction in violation of the IDCSA. Both parties have moved for summary judgment on the claims.

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable

---

[2] The Town had executed a "commission authorization" which permitted Martin Financial to charge "reasonable and necessary" collection fees, including fees in the amount of fifty percent (50%) of the debt when the amount owed fell within the range of $1.00 to $600.00 [DE 35 at 11].

inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Finally, the fact that the parties have cross-filed for summary judgment does not change the standard of review. *See M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009); *see also Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (noting that the court looks to the burden of proof that each party would bear on an issue at trial and then requires that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

Ms. Knepp's FDCPA and IDCSA claims are premised on the dunning letters admittedly sent by Martin Financial during its attempt to collect on the outstanding water bill that Ms. Knepp owed to the Town. The Court considers each claim in turn.

### A. The Fair Debt Collection Practices Act

The FDCPA, 15 U.S.C. § 1692 *et seq.*, imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices.[3] Relevant to this case is the fact that the FDCPA makes it unlawful for a debt collector to use "any false, deceptive, or misleading representation or means in connection with the collection of [a] debt." § 1692e. An objective "unsophisticated consumer" standard applies to § 1692e claims: The court asks "whether a person of modest

---

[3] A debt collector who "fails to comply with any [FDCPA] provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and statutory "additional damages" not to exceed $1,000 per action. § 1692k(a); *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 385 (7th Cir. 2018).

education and limited commercial savvy would be likely to be deceived" by the debt collector's representation. *Dunbar v. Kohn Law Firm, S.C*, 896 F.3d 762, 764 (7th Cir. 2018) (citing *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007)). The objective test disregards "bizarre" or "idiosyncratic" interpretations of collection letters. *Dunbar*, 896 F.3d at 765 (citing *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)). A collection letter can be "literally true" and still be misleading, for example, if it "leav[es] the door open" for a "false impression." *Id*. (internal citation and citation omitted). The question of whether an unsophisticated consumer would find certain debt collection language misleading is a question of fact. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citation omitted) (noting that in cases involving letters that are plainly deceptive or misleading, no extrinsic evidence is required in order for the plaintiff to be successful). Further, the language at issue must constitute a materially false statement. *Boucher v. Fin. Sys. of Green Bay, Inc.,* 880 F.3d 362, 366 (7th Cir. 2018) (citing *Hahn v. Triumph P'ships*, 557 F.3d 755, 757-58 (7th Cir. 2009)). A statement is material if it would influence a consumer's decision to pay a debt in response to a dunning letter. *Id*.

It is undisputed that the dunning letters sent to Ms. Knepp by Martin Financial both stated that "*[a]dditionally, legal interest will accrue* at the rate of eight percent (8%) per year *as provided for by Indiana State Statute*, unless there is a written contract allowing for a different rate of interest which may apply." [DE 1-1; DE 1-2] (emphasis added). It is also undisputed that there is no underlying contractual relationship between Ms. Knepp and Martin Financial, or any other contract which provided for the recovery of interest. Moreover, Martin Financial has not identified any source of authority under Indiana law by which it could collect interest.

While the Court sua sponte recognizes that Indiana Code § 24-4.6-1-103(b) allows for application of an 8% annual interest rate "from the date an itemized bill shall have been rendered and payment demanded on an account stated, [or] account closed," that statute is generally used to determine the amount of prejudgment interest the losing party in a lawsuit owes.[4] *See, e.g., Easyrest, Inc. v. Future Foam, Inc.*, 2008 WL 126647, *2 (S.D. Ind. 2008) ("Under Indiana Code § 24-4.6-1-103, unless a different rate is specified by contract, prejudgment interest is awardable at a rate of Eight Percent (8%) per annum from the time payment was due until judgment is entered"); *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018) (prejudgment interest in the amount of 8% awarded on a breach of contract action). Moreover, Martin Financial has not pointed the Court to any authority standing for the proposition that Indiana Code § 24-4.6-1-103 allows a debt collector to collect interest on an unpaid debt; where, as here, the debt collector has not produced a contract that provides for the imposition of interest in the first place, or any other evidence that an 8% interest rate would apply. *See, e.g., Reynolds v. EOS CCA, U.S. Asset Mgmt., Inc.*, No. 114CV01868JMSDML, 2016 WL 1639120, at *6 (S.D. Ind. Apr. 26, 2016); *Reed v. EOS CCA*, No. 114CV01745JMSDKL, 2016 WL 1639121, at *5 (S.D. Ind. Apr. 26, 2016); *see also Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 744 (N.D. Ill. 2017) (rejecting the argument that the statement, "charges may continue to accrue on some or all of the balance," was actually a reference to post-judgment interest and costs that a court might award in the wake of a lawsuit to collect the debt).

---

[4] In fact, it appears that Martin Financial may use the same form letter to collect on unpaid judgments since the letter advises debtors that should they dispute the validity of the debt, then Martin Financial will obtain "verification of the debt or obtain a copy of the judgment." [DE 1-1; DE 1-2]. But there is no evidence that a judgment has been entered with respect to Ms. Knepp's outstanding debt.

Here, as in *Boucher* and *Lox*, the challenged statement regarding interest that "will accrue" pursuant to "Indiana State Statute" is misleading to an unsophisticated consumer. Because Martin Financial failed to identify any applicable Indiana statute permitting it to charge interest on Ms. Knepp's debt, it effectively admitted (through waiver) that the dunning letters falsely imply a possible outcome that cannot legally come to pass. *See Boucher*, 880 F.3d at 367 (holding that it was misleading to state: "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater;" when in fact, the defendant could not impose "late charges and other charges" under Wisconsin law); *Lox*, 689 F.3d at 824-25 (holding that it was misleading to state: "Our client may take legal steps against you and if the courts award judgement, the court could allow court costs and attorney fees;" because under the "American Rule" courts do not award attorney fees unless there is an explicit contractual or statutory exception, and the debt collector failed to identify any applicable exception).

In this case, Ms. Knepp was likely to believe Martin Financial when it said that legal interest "will accrue" pursuant to an "Indiana State Statute," and see such language as a potential consequence of delayed payment. *See id.* (finding that the statement is misleading to an unsophisticated consumer because "[t]his is not the type of legal knowledge we can presume the general public has at its disposal."); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 801–02 (7th Cir. 2009) (reasoning that to threaten to take some action "to the extent permitted by law," is to imply that, under some set of circumstances and to some extent, the law actually permits that action to be taken); *Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16-CV-1979, 2016 WL 7104283, at *5 (N.D. Ill. Dec. 6, 2016) ("Truisms about potential interest payments are no different; they are not deceptive only 'if [Defendant] could actually charge interest on

[Plaintiff's] account.'") (citing *Toction v. Eagle Accounts Grp., Inc.*, 2015 WL 127892, at *3

(S.D. Ind. Jan. 8, 2015); *Safdieh v. P & B Capital Grp.*, LLC, 2015 WL 2226203, at *5 (D.N.J.

May 12, 2015)).

Moreover, the Court concludes that the challenged statement is material because

regardless of the amount of the interest to be charged, an unsophisticated consumer understands

that the addition could increase the amount of debt owed, thus potentially making it "more

costly" for the consumer to hold off on payment. *See Boucher*, 880 F.3d at 368 (citing *Lox*, 689

F.3d at 827). Thus, even if this additional charge is minimal, such that it might not "alter [the

consumer's] course of action," it is still material because it would be "a factor in [Ms. Knepp's]

decision-making process." *Id.*

As the Seventh Circuit elaborated in *Boucher*:

This is especially true for consumers who are subject to debt collection activity.
We have acknowledged that "[w]hen default occurs, it is nearly always due to an
unforeseen event such as unemployment, overextension, serious illness, or marital
difficulties or divorce." *McMillan* [*v. Collection Professionals Inc.*], 455 F.3d
[754,] [] 762 [(7th Cir. 2006)] (quoting S. Rep. No. 95–382, at 2 (1977), *as
reprinted in* 1977 U.S.C.C.A.N. 1695, 1697). Because these consumers must
often make difficult decisions about how to use scarce financial resources, it is
plausible that the fear of "late charges and other charges" might influence these
consumers' choices. Therefore, the challenged statement is material.

880 F.3d at 368. In fact, Ms. Knepp's complaint alleges that she was suffering from illnesses

which caused her inability to work and pay her bills [DE 1 at 2]. In short, she has shown as a

matter of law that the dunning letters were materially false and misleading to an unsophisticated

consumer in violation of § 1692e.

Ms. Knepp also alleges that the letters contained other false representations involving

discrepancies relative to the "amounts due" and the misidentification of "MFM Fees" as a

"creditor" of an unlabeled collection fee. *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d

562, 565–66 (7th Cir. 2004). This may be true, but because the Court has concluded that the defendant violated § 1692e by indicating that legal interest will accrue on the debts, the Court need not reexamine the letters for other FDCPA violations because one false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation.[5] *See, e.g., Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1047 (W.D. Wis. 2002).

## B.    The Indiana Deceptive Consumer Sales Act

The IDCSA prohibits a "supplier" from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). "Supplier" and "consumer transaction" are defined to include debt collectors and debt collection. *Id*. at § 24-5-0.5-2. The statutory list of prohibited acts expressly includes violations of the FDCPA. *Id*. at § 24-5-0.5-3(b)(20). Ms. Knepp's Indiana claim focuses on the fact that there was a violation of the FDCPA. Defendant doesn't mount a separate defense to this claim except to say that "the debt is very real" and it had "authority to collect the debt." [DE 26 at 5]. This much may be uncontested, but this isn't sufficient to raise a genuine issue of material fact with respect to the violation that occurred. *See Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016) (arguments not made in response to summary-judgment motion are waived). Accordingly, Ms. Knepp is entitled to summary judgment on the IDCSA claim.

---

[5] The Court recognizes that in order to determine the appropriate amount of statutory damages, the Court looks at "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," 15 U.S.C. § 1692k(b)(1); however, a plaintiff is entitled to a jury determination as to statutory damages. *See Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 897 (7th Cir. 1998). Thus, further proceedings will be held so that a proper determination on damages can be made.

## IV.  CONCLUSION

For those reasons, the Court GRANTS Plaintiff Zandra Knepp's Motion for Summary Judgment [DE 23] and DENIES Defendant Marsha Huffman d/b/a Martin Financial Management, Inc.'s Motion for Summary Judgment [DE 25] with respect to liability. The Court will contact counsel in the near future for purposes of scheduling a telephonic status conference so that this case may move forward to its disposition.

SO ORDERED.

ENTERED:  September 28, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court